Filed 1/5/22  In re R.W. CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re R.W., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>K.A.,<br><br>    Defendant and Appellant. | G060413<br><br>(Super. Ct. No. 18DP1054)<br><br>O P I N I O N |

        Appeal from an order of the Superior Court of Orange County, Antony C. Ufland, Judge.  Affirmed.

        Elizabeth Klippi, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Karen L. Christensen and Kristen Lecong, Deputy County Counsel, for Plaintiff and Respondent.

\*  \*  \*

When the juvenile court terminated its jurisdiction over R.W., it entered an exit order granting his mother, appellant K.A. (Mother), four hours of supervised visitation per week. Mother challenges that order on appeal, asserting the court abused its discretion when it failed to grant her request for more liberal visitation. We disagree and therefore affirm. The visitation order was well within the court's discretion.

## FACTS

This is our third opinion in this proceeding. As detailed in our previous unpublished opinions (*In re R.W.* (Oct. 19, 2020, G058884) and *In re C.A.* (Mar. 3, 2021, G059464)), Mother has an extensive history of methamphetamine abuse, a related criminal history, and various mental health issues, including paranoia, delusions, and hearing voices.

In October 2018, the Orange County Social Services Agency (Agency) filed a juvenile dependency petition concerning Mother's infant son, R.W., and his two older half-sisters,[1] based in large part on Mother's unresolved mental health issues and substance abuse, as well as unresolved substance abuse by R.W.'s father. (See Welf. & Inst. Code,[2] § 300, subd. (b)(1).) The juvenile court found the allegations to be true, sustained the petition, removed the minors from their parents' custody, and ordered reunification services. Mother's case plan included a psychiatric evaluation, individual counseling, drug testing, parenting education, and a substance abuse program.

---

[1]     The present appeal only concerns R.W., not his sisters.

[2]     All further undesignated statutory references are to this code.

2

In the subsequent review period, Mother visited her children on a fairly regular basis. However, she fell asleep during some visits. She also missed numerous drug testing appointments, tested positive for methamphetamine several times, and was arrested for possession of a controlled substance.

After 12 months of family reunification services, the juvenile court concluded Mother had made only minimal progress in her case plan and terminated her services in January 2020. Per the Agency's recommendation, the court ordered four hours of supervised visitation with R.W. per week. In the months that followed, Mother continued to struggle with substance abuse and was arrested multiple times for possession of a controlled substance.

At the 18-month review hearing in September 2020, the juvenile court placed R.W. with his father under a family maintenance plan. Per the Agency's recommendation, the court also continued the visitation arrangement of four hours per week of supervised visitation between Mother and R.W.; R.W.'s father was not authorized to supervise the visits.

Mother's visits with R.W., which were largely virtual because of the ongoing COVID-19 pandemic, generally went well, with Mother engaging appropriately with the child. However, Mother continued to struggle with her sobriety and was arrested again for possession of methamphetamine and a meth pipe in September 2020; she admitted to the arresting officer that she has used methamphetamine "[e]very day, off & on, for the last [ten] to 15-years." Mother's visitation referral was also terminated in March 2021 after she missed three visitation appointments, requiring her to seek reinstatement.

In anticipation of the April 2021 section 364 review hearing, the Agency recommended that the juvenile court terminate jurisdiction, award custody over R.W. to the father, and issue exit orders continuing the same visitation arrangement. The Agency reported Mother's visits with R.W. were "going well with little concern," but it also

3

noted Mother had made "minimal progress to show the mitigation of [the] safety concerns which brought the child to the attention of the Juvenile Court," and thus would require supervised visitation going forward.

Mother testified on her own behalf at the section 364 review hearing. She agreed with the Agency's recommendation to terminate jurisdiction, but she did not agree with its recommendation that she have only four hours of supervised visitation per week. According to Mother, R.W. (now age 4) clearly enjoys their visits; he always runs up to her and hugs her at the beginning of their in-person visits; and he begs her not to hang up at the end of their virtual visits. Mother further testified that four hours of visitation barely gives her and R.W. enough time to get comfortable with each another, and she suggested eight to 10 hours of visitation per week would be more appropriate.

During oral argument, Mother's counsel argued for a more liberal visitation arrangement, asserting it would be in R.W.'s best interest. Counsel for the Agency, R.W., and the father all asked the juvenile court to adopt the Agency's proposed exit orders.

After hearing from counsel, the juvenile court terminated jurisdiction and issued exit orders which granted Mother four hours of weekly supervised visitation (the existing arrangement). The court explained it was adopting the Agency's recommendations but added that Mother could ask the family court to increase visitation if there was some change in circumstances in the future.[3] Mother filed a notice of appeal.

---

[3]     A family court may later modify a juvenile court's section 362.4 exit orders, but only if it "finds that there has been a significant change of circumstances since the juvenile court issued the order and modification of the order is in the best interests of the child." (§ 302, subd. (d).)

4

## DISCUSSION

A juvenile court has the authority to issue an order for custody and visitation when dependency jurisdiction is terminated.  (§ 362.4, subd. (a).)  In issuing such an exit order, the juvenile court must "make an *informed* decision" that focuses on the best interests of the child.  (*In re John W.* (1996) 41 Cal.App.4th 961, 973.)  We review a section 362.4 exit order for abuse of discretion; we will not disturb the order unless the juvenile court made an arbitrary, capricious, or patently absurd determination.  (*In re M.R.* (2017) 7 Cal.App.5th 886, 902.)

Mother's sole argument on appeal is that the juvenile court abused its discretion in issuing its exit order by failing to grant her more visitation time with R.W.  According to Mother, the court had no reason to deprive her of additional visitation, and it was arbitrary for the court to continue with the same visitation amount as before.

We cannot agree.  The record here confirms Mother had significant unresolved substance abuse issues that persisted throughout R.W.'s dependency case.  Mother failed to demonstrate any progress in addressing those issues, and she fails to address those issues on appeal.  Although her visitation was generally appropriate and R.W. appeared to enjoy the visits, Mother's behavior outside the visits prevented the court from moving her visits from the confines of a visitation center.  Accordingly, we cannot say the juvenile court abused its discretion in limiting Mother's monitored visitation with R.W.

This is not a case where the juvenile court refused to allow a party to testify about visitation or applied the wrong legal standard, so the cases Mother relies on do not assist her.  (See *S.T. v. Superior Court* (2009) 177 Cal.App.4th 1009, 1016 (*S.T.*) [court's application of wrong legal standard in terminating reunification services required reversal]; *In re Roger S.* (1992) 4 Cal.App.4th 25, 29 [court's refusal to hear evidence on visitation before issuing exit order was reversible error].)  The court here allowed Mother to present evidence, including testimony, to support her request for additional visitation.

After considering all of the evidence, the juvenile court determined that no change in Mother's visitation frequency was appropriate.

Citing the rule that failure to exercise discretion is an abuse of discretion (*S.T., supra,* 177 Cal.App.4th at p. 1016), Mother asserts the juvenile court did not employ *any* discretion in crafting its visitation order, simply leaving the prior visitation order in place without regard to Mother's positive visits with R.W. We disagree. The court weighed the evidence, heard argument from both sides, and ultimately adopted the Agency's recommendation. The fact that the amount of visitation granted in the exit orders was the same amount afforded in the prior visitation order is not evidence the court failed to exercise its discretion.

## DISPOSITION

The order is affirmed.

GOETHALS, J.

WE CONCUR:

O'LEARY, P. J.

ZELON, J.*

*Retired Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

6